UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

KOHL'S DEPARTMENT STORES, IN ITS
CAPACITY AS PLAN ADMINISTRATOR
OF THE KOHL'S GROUP HEALTH PLAN,

                                        Plaintiff,

                -against-

FRED CASTELLI and LITE & RUSSELL

                                        Defendants,
-------------------------------------------------------------------X

FILED
CLERK

8/8/2013 2:44 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

MEMORANDUM OF
DECISION AND ORDER
12-cv-02990 (ADS)(ARL)

APPEARANCES:

**Tansey, Tracy & Convery**
*Attorneys for the Plaintiff*
221 Jefferson Avenue
Staten Island, NY 10306
        By:     James N. Tracy, Esq.
                Thomas Vincent Convery, Esq., Of Counsel

**Lite & Russell**
*Attorneys for the Defendants*
212 Higbie Lane
West Islip, NY 11795
        By:     Justin N. Lite, Esq., Of Counsel

**SPATT, District Judge.**

        On June 14, 2012, the Plaintiff Kohl's Department Stores ("Kohl's" or the "Plaintiff"),

the Plan Administrator for the Kohl's Group Health Plan (the "Plan"), commenced this action

against the Defendants Fred Castelli ("Castelli") and Lite & Russell (collectively, the

"Defendants").  The Plaintiff commenced this action to enforce the terms of the "Plan" and for

equitable relief under the provisions of 29 U.S.C. § 1132(a)(3).

        Specifically, the Plaintiff brings causes of action demanding that (1) Lite & Russell

reimburse the Plan for the portion of legal service fees that were rendered in connection with a personal injury action filed by Castelli against a third-party in the Supreme Court of the State of New York ("the Underlying Action") and (2) the Defendants reimburse the Plan for the portion of the settlement proceeds recovered in the Underlying Action as reimbursement for the paid benefits over which the Plan has an equitable lien or a constructive trust.

Presently before the Court is the Defendants' motion to dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6).  First, the Defendants seek to dismiss the action on the ground that the Plaintiff's subrogation causes of action are time-barred.  Second, the Defendants seek to dismiss the action on the ground that New York General Obligation Law §5-335 ("NY GOL § 5-335") prohibits health benefit providers from enforcing any non-statutory contractual right of reimbursement and/or subrogation claims against an insured's recovery in a personal injury lawsuit.  In this respect, the Defendants contend that the Employee Retirement Income Security Act ("ERISA") does not pre-empt NY GOL § 5-335.

In addition, the Defendants seek to dismiss the first and second causes of action on the ground that the Plaintiff does not enjoy a statutory lien.  Finally, the Defendants seek to dismiss the Plaintiff's second cause of action on the ground that the Plaintiff has no legal authority to assert an equitable lien over the legal fees earned by Lite & Russell.

On March 29, 2013, Kohl's filed an opposition to this motion.  The Defendants have not filed a reply.  For the reasons that follow, the Defendants' motion is denied.

## I. BACKGROUND

### A. Factual Background

Unless otherwise stated, the following facts are drawn from the Complaint and are

construed in a light most favorable to the Plaintiff.

On or about November 13, 2007, Castelli sustained personal injuries as a result of a motor vehicle accident (the "Accident").  At the time of the Accident, Castelli was a "Covered Person" under the Plan.

At all relevant times, the Plan was a self-funded employee welfare benefits plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 18 U.S.C. § 1001, *et seq.*

The terms and conditions of coverage under the Plan included the following:

> If you receive a Benefit payment from the Plan for an injury caused by a third party, and you later receive any payment for that same condition or injury from another person, organization or insurance company, we have the right to recover any payments made by the Plan to you.

> You agree as follows:

> You will reimburse the Plan immediately upon recovery.  Once we make or are obligated to make payments on your behalf, we are granted and you are required and consented to, an equitable lien by agreement or constructive trust on the proceeds of any payment, reimbursement, settlement or judgment received by you from Third Parties or any other source.

(Comp., at ¶¶ 3, 4.) (internal quotation marks omitted).

 Between October 2009 and February 2010, the Plan paid medical benefits on behalf of Castelli in the amount of $63,732.80 ("the Paid Benefits").  The Paid Benefits covered medical expenses related to injuries Castelli sustained as a result of the Accident.

On or about May 30, 2008, Castelli filed a personal injury action in the Supreme Court of the State of New York, County of Suffolk, alleging that the negligence of third parties caused the Accident.  Lite & Russell represented Castelli in that action, entitled "Freddy Castelli, et al v. Town of Brookhaven, et al," Index No. 20992-08, ("the Underlying Action").  As part of that litigation, Castelli and Lite & Russell entered into a retainer agreement providing for a one-third contingency attorneys' fee.  In or about 2010, the Underlying Action settled for a sum certain

3

("the Settlement Proceeds").

As a result, the Plaintiff alleges that the Plan has an equitable lien or constructive trust over that portion of the Settlement Proceeds owed to the Plan as reimbursement for the Paid Benefits.  The Plaintiffs further allege that the Defendants have refused to reimburse the Plan for its portion of the Settlement Proceeds.

In its first causes of action, the Plaintiff demands that Defendants reimburse the Plan for the portion of the Settlement proceeds to which the Plaintiff was entitled, including reasonable attorneys' fees and costs pursuant to 29 U.S.C § 1132(g).

In its second cause of action, the Plaintiff alleges that the Defendant Lite & Russell accepted a fee for legal services rendered in connection with the Underlying Action from the Settlement Proceeds.  The Plaintiff further contends that the Plan has an equitable lien or constructive trust over that portion of the fee owed to the Plan as reimbursement for the Paid Benefits, and demands that Lite & Russell reimburse the Plan.

**B. Procedural History**

On June 14, 2012, the Plaintiff filed the Complaint.  On or about September 19, 2012, the Defendants filed the instant motion, seeking to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief could be granted.

## II. DISCUSSION

**A. Standard on a Motion to Dismiss**

Under the now well-established Twombly standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).  The Second Circuit has explained that, after Twombly, the Court's inquiry under

12(b)(6) is guided by two principles.  Harris v. Mills, 572 F.3d 66 (2d Cir. 2009) (quoting

Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).

"First, although 'a court must accept as true all of the allegations contained in a

complaint,' that 'tenet' 'is inapplicable to legal conclusions' and 'threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice.'"  Id.

(quoting Iqbal, 56 U.S. at 663).  "'Second, only a complaint that states a plausible claim for relief

survives a motion to dismiss and '[d]etermining whether a complaint states a plausible claim for

relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense.'"  Id. (quoting Iqbal, 56 U.S. at 664).  Thus, "[w]hen there are

well-pleaded factual allegations, a court should assume their veracity and . . . determine whether

they plausibly give rise to an entitlement of relief."  Iqbal, 56 U.S. at 664.

Finally, "in adjudicating a Rule 12(b)(6) motion, a district court must confine its

consideration 'to facts stated on the face of the complaint, in documents appended to the

complaint or incorporated in the complaint by reference, and to matters of which judicial notice

may be taken.'"  Leonard F. v. Israel Disc. Bank of N.Y., 199 F.3d 99, 107 (2d Cir. 1999)

(quoting Allen v. West Point–Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991)).

## B. As to Whether the Plaintiff's Claim was Timely Filed

The Plaintiff asserts claims under 29 U.S.C. § 1132(a)(3) to enforce the terms of the Plan.

The Defendants counter that the three-year Statute of Limitations under New York CPLR § 206

governs subrogation actions, and that the Plaintiff's claims are time-barred.  In this regard, the

Defendants contend that this three year Statute of Limitations begins to run from the date of the

accident and that the Plaintiffs had until November 13, 2010, three years after the accident

occurred, to commence this action.

In order to determine the appropriate statute of limitations governing the Plaintiff's claims, the Court must first determine whether the Plaintiff's claims for reimbursement of Paid Benefits constitute a form of equitable relief under § 1132(a)(3).

**1.  As to Whether Plaintiff's Claims for Reimbursement of Paid Benefits are a Form of Equitable Relief under § 1132(a)(3).**

29 U.S.C. § 1132(a)(3) provides as follows:

> [a] civil action may be brought by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

"For restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 214, 122 S. Ct. 708, 714-15, 151 L. Ed. 2d 635 (2002).

In Knudson, the Court addressed whether insurers can bring "subrogation-like" actions under an ERISA plan pursuant to 29 U.S.C. § 1132(a)(3).  There, an insurance company brought an action to compel a beneficiary, who had recovered from an alleged third-party tortfeasor, to reimburse the insurer for the benefits it had paid to the beneficiary.  However, the settlement funds that the insurer sought were not in the beneficiary's possession.  Id. at 214.  Rather, the settlement funds were partly directed into a Special Needs Trust to provide for medical care; partly disbursed to the beneficiary's attorneys; and the remainder was placed in a client trust to satisfy other creditors, including the insurer's claims.  Id. at 661.  Ultimately, the Supreme Court held that § 1132(a)(3) did not authorize an action for the specific performance of reimbursement, explaining that the term "equitable relief" refers to relief "typically available in equity." Id. at 209 (quoting Mertens v. Hewitt Associates, 508 U.S. 248, 251, 113 S. Ct. 2063, 124 L. Ed. 2d

161 (1993).  In the Court's view, the insurer's claim essentially imposed personal liability on the beneficiary to pay money, which was not a relief that is typically available in equity.

Four years later, in Sereboff v. Mid Atlantic Medical Services, Inc., 547 U.S. 356, 126 S. Ct. 1869, 164 L. Ed. 2d 612 (2006), the Supreme Court again addressed the question of whether an action seeking reimbursement under ERISA for benefits paid by a plan constituted a form of "equitable relief."  In that case, the beneficiaries of a health plan were injured in a car accident, and the insurer paid a sum of money to cover medical expenses under the ERISA plan.  The plan contained an "'Acts of Third Parties'" provision, which required the beneficiary to reimburse the insurer for benefits that it recovered from a third party.  The beneficiaries settled their tort suit, and the insurer filed suit seeking to collect the sum it had paid for the beneficiary's medical expenses.  The Court determined that the insurer's claim sounded in equity because, unlike in Knudson where the petitioner sought funds which had been placed in a trust, the insurer in Sereboff "sought identifiable funds within the beneficiary's [Sereboffs'] possession and control." Id. at 357.

In Thurber v Aetna Life Ins. Co., 712 F.3d 654, 663 (2d Cir. 2013), the Second Circuit clarified why the Supreme Court reached different results in Knudson and Sereboff.  In Thurber, an insurer counterclaimed against a beneficiary for equitable restitution of overpaid short-term disability benefits.  The Second Circuit explained that in Knudson, the insurer could not assert an equitable lien on settlement funds because the funds were contained in a separate entity, a restrictive trust, while in Sereboff, the beneficiaries had "possession and control over the specific funds sought by their insurer."  Id. at 663.  The Second Circuit further explained that, in Sereboff, the ERISA plan "specifically identified a particular share of particular funds subject to return," and consequently, the insurer 'could rely on this familiar rule of equity to collect for the

medical bills it had paid.'" Id.  Furthermore, the Second Circuit held that, in Thurber, although

the case differed from Sereboff in that the "particular fund" was an overpayment of benefits and

not third-party income and that the overpayments had "dissipated," the claim brought was

nevertheless equitable because the insurer sought specific funds, namely overpayments in a

specific amount (the total overpayment) as authorized by the plan.  Id.

Here, in the Court's view, the Plaintiff's claim for reimbursement qualifies as equitable

relief.  Like the insurers in Sereboff and Thurber, Kohl's "specifically identified a particular

share of particular funds subject to return."  Thurber, 712 F.3d at 663.  Likewise, Kohl's seeks a

specific portion – the Paid Benefits together with any judgment and post-judgment interest and

reasonable attorneys' fees and costs – and "specifically identified funds" (the Settlement

Proceeds).  (Comp., at ¶ 6.)  In addition, similar to the ERISA plan in Sereboff, which identified

a "particular share of [the] fund to which [the insurer] was entitled – 'all recoveries from a third

party (whether by lawsuit, settlement, or otherwise)'" –'the Plan at issue here also identifies "any

payment for that same condition or injury from another person, organization, or insurance

company" as the share of funds to which Kohl's is entitled.  Sereboff, 547 U.S. at 364.

Therefore, the Court finds that Plaintiff's claims for reimbursement of Paid Benefits is a

form of Equitable Relief under § 1132(a)(3).

### 2. As to the Applicable Statute of Limitations for A Claim for Equitable Relief under § 1132(a)(3).

"When Congress fails to provide a statute of limitations for claims arising under federal

statutes, a court must apply the limitations period of the state-law cause of action most analogous

to the federal claim."  Sandberg v. KPMG Peat Marwick, L.L.P., 111 F.3d 331, 333 (2d Cir.

1997).

In Manginaro v. Welfare Fund of Local 771, 21 F. Supp. 2d 284, 299-300 (S.D.N.Y.

1998), where an insurer counterclaimed for reimbursement of medical expenses it had already paid, the court found that the statute most analogous to a claim enforcing a contractual right to reimbursement for benefits paid was the six-year limitation on contract actions. See also Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan, 572 F3d 76, 78 (2d Cir. 2009). ("Here, New York's six-year limitations period for contract actions, N.Y. CPLR 213, applies as it is most analogous to § 1132 actions."). However, in Burke, the court found that, if the written agreement contains a shorter limitation period, then the shorter limitation period will govern. Manginaro, 21 F. Supp. 2d at 293 (citing N.Y. CPLR § 201).

Here, there is no indication that the Plan contained a shorter limitation period. For this reason, the applicable statute of limitations with respect to the Plaintiff's claim is six years. Because the Plaintiff began paying the medical benefits in October 2009, it had until October 2015 to bring claims for reimbursement. The Plaintiff filed its Complaint on June 14, 2012. Therefore, the Court finds that the Plaintiff's claims are timely.

**C. As to Whether ERISA Preempts NY GOL § 5-335**

The Defendants also contend that NY GOL § 5-335 prohibits health benefit providers from enforcing non-statutory contractual rights of reimbursement and subrogation claims against any recoveries of a personal injury lawsuit. In opposition, the Plaintiff contends that NY GOL § 5-335 is expressly preempted by ERISA and does not pose an obstacle to the Plaintiff's recovery rights.

NY GOL § 5-335 states in pertinent part:

When a plaintiff settles with one or more defendants in an action for personal injuries, medical, dental, or podiatric malpractice, or wrongful death, it shall be conclusively presumed that the settlement does not include any compensation for the cost of health care services, loss of earnings or other economic loss to the extent those losses or expenses have been or are obligated to be paid or reimbursed by a benefit provider, except for those payments as to which there is a

statutory right of reimbursement. By entering into any such settlement, a plaintiff shall not be deemed to have taken an action in derogation of any nonstatutory right of any benefit provider that paid or is obligated to pay those losses or expenses; nor shall a plaintiff's entry into such settlement, constitute a violation of any contract between the plaintiff and such benefit provider.

Except where there is a statutory right of reimbursement, no party entering into such a settlement shall be subject to a subrogation claim or claim for reimbursement by a benefit provider and a benefit provider shall have no lien or right of subrogation or reimbursement against any such settling party, with respect to those losses or expenses that have been or are obligated to be paid or reimbursed by said benefit provider.

"To provide such uniformity, [NY GOL§ 5-335] contains broad preemption provisions, which safeguard the exclusive federal domain of employee benefit plan regulation." Wurtz v. Rawlings Co., LLC, No. 12–CV–1182, 2013 WL 1248631 (E.D.N.Y. 2013). "Section 514(a) provides that 'the provisions of [ERISA] shall supersede any and all State laws insofar as they now or hereafter relate to any employee benefit plan.'" Id. at 15, quoting 29 U.S.C. § 1144(a). "'A claim under state law relates to an employee benefit plan if that law 'has a connection with or reference to such a plan.'" Id. at 16, (quoting Franklin H. Williams Ins. Trust v. Travelers Ins. Co., 50 F.3d 144, 148 (2d Cir. 1995). NY GOL § 5-335 "'relates to' an ERISA plan and is expressly preempted." Id. at 15. Where there is a statutory right of reimbursement, section 5-335's limitations do not apply. Id. at 14. "The right of reimbursement contained in the ERISA-governed Plans is enforced by means of ERISA," rather than by a contract between the parties. Id. at 14.

In Wurtz, the plaintiffs, participants in an ERISA-governed health benefits plan, brought claims against the defendant plan providers asserting that "NY GOL § 5-335 trumps any reimbursement rights that defendants might have under ERISA and/or the terms of their health benefit plans." Id. at 1. The defendants moved to dismiss the plaintiffs' claims on the grounds that NY GOL § 5-335 was preempted by ERISA. The court granted the motion to dismiss,

finding that the plaintiffs' claims were preempted.  The court characterized the plaintiff's causes of action as "[seeking] to cut off defendants' reimbursement rights under the plan and to retain benefits that otherwise would be subject to reimbursement."  Id.  Therefore, the court found that "these actions fall within the scope of section 502(a)(1)(B) of ERISA, which includes actions 'to recover benefits due . . . under the terms of the plan, or to enforce his rights under the terms of the plan.'"  Id. at 8.  Furthermore, the court found that "Section 5-335's reimbursement/subrogation obligations would intrude upon an area that Congress intended to be fully occupied by federal statutory law," and if it were not preempted by ERISA, federal and state law would be in conflict, a situation Congress intended to prevent through ERISA's broad preemption power.  Id. at 16.

In addition, the court pointed out a "clear and highly relevant exception [to NY GOL § 5-335]: 'where there is a statutory right of reimbursement.'"  Id. at 14.  The court rejected the plaintiff's argument that any right of reimbursement that the defendant might have "arises under the contract between plaintiff and defendants, and not under ERISA."  Id.  Rather, the court found that a right of reimbursement was expressly stated in the ERISA-governed plans, which is enforced by an ERISA provision.  Therefore, the court found that the exception to N.Y. GOL § 5-335 applied and the plaintiff's claims in Wurtz were completely preempted under ERISA. Id. at 14-15.

In the present case, the Defendants contend that NY GOL § 5-335 prohibits health benefit providers from enforcing any nonstatutory contractual right of reimbursement and subrogation claims against an insured's recovery in a personal injury lawsuit.  However, similar to the ERISA-governed plan in Wurtz, the Plan administered by the Plaintiff contains an express right of reimbursement.  (Comp., at ¶¶ 3, 4.)  Furthermore, as the court found in Wurtz, the right of

reimbursement contained in the Plan is enforced by means of ERISA through section 502(a)(1)(B), which allows actions to be brought by a participant or beneficiary "to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(13). Consequently, like the plan in Wurtz, the Plan falls under the exception because there is "a statutory right of reimbursement." Therefore, the Court finds that, in this case, any N.Y. GOL § 5-335 defense to the Plaintiff's claims is preempted by ERISA.

Next, the Defendants contend that under the Savings Clause of ERISA, a state law that sufficiently "relates to" a benefit plan can be saved from preemption if it "regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). First, "for these statutes to be 'laws . . . which regulate insurance,' they must be 'specifically directed toward' the insurance industry." Ky. Ass'n of Health Plans, Inc. v. Miller, 538 U.S. 329, 334, 123 S. Ct. 1471, 155 L. Ed. 2d 468 (2003). Second, the statute must "substantially affect the risk pooling arrangement between the insurer and the insured." Id. at 337.

In Miller, the Supreme Court found that Kentucky statutes which prohibited health benefit plans from discriminating against providers willing to meet terms and conditions for plan participation "regulate[d] insurance by imposing conditions on the right to engage in the business of insurance." Id. at 338 (quotation marks omitted). Furthermore, it found that the state laws substantially affect the risk pooling arrangement between the insurer and insured "by expanding the number of providers from whom an insured may receive health services" and "alter[ing] the scope of permissible bargains between insurers and insureds." Id. at 338-39. Therefore, the Court found that the Kentucky statutes were not preempted by ERISA.

In Wurtz, the court found that section 5-335 did not satisfy Miller's two requirements to qualify as a law that "regulates insurance" under ERISA § 514(b)(2)(A). First, the Wurtz court

12

found that section 5-335 was not "specifically directed" at the insurance industry as required by
Miller because, although it "applies to entities in the insurance field," it also "[encapsulated]
numerous entities falling outside of the insurance industry, and [applied] to benefits beyond the
insurance field." Wurtz, 2013 WL 1248631 at 18. "Second, the court found that [section 5-335]
did not meet the second requirement because section 5-335 did not "substantially affect the risk
pooling arrangement between the insurer and the insured" because it only applies to filed
settlements of tort actions and therefore affected "only certain types of settlements in certain
types of cases involving certain types of benefit providers." Id. at 19.

      Here, the Defendants contend that NY GOL § 5-335 falls under the "Savings Clause" of
ERISA because it is solely directed at the actual health benefit providers and is therefore
specifically directed towards entities engaged in insurance. However, the Court agrees with the
finding in Wurtz that Section 5-335 does not fall under the Savings Clause of ERISA. Section
5-335 "expressly limits a benefit provider's ability to enforce a subrogation claim, claim for
reimbursement, or lien against a party entering into a settlement, unless a statutory right of
reimbursement applies." It defines "benefit provider" as "any insurer, health maintenance
organization, health benefit plan, preferred provider organization, employee benefit plan or other
entity which provides for payment or reimbursement of health care expenses, health care
services, disability payments, lost wage payments or any other benefits under a policy of
insurance or contract with an individual or group." N.Y. G.O.L. § 5–101(4). Thus, the Court
agrees with the finding in Wurtz that because of the "sweeping scope" of the statute, it does not
meet Miller's first requirement. Namely, it was not specifically directed at the insurance
industries.

      However, even if Section 5-335 were directed at the insurance industry, the provision

does not satisfy <u>Miller</u>'s second requirement.  The Defendants assert that Section 5-335 "substantially affects the risk pooling between the insurer and the insured" because the law prohibits health benefit providers in New York from enjoying a contractual right to a lien and a contractual right of reimbursement.  The Defendants insist that a prohibition against recouping these expenses drastically increases costs to insurers, which ultimately increase insurance premiums, thereby substantially affecting the risk pooling between the insurer and the insured within the New York health benefit market.

Again, however, the Court concurs with <u>Wurtz</u> and finds that Section 5-335 does not substantially affect the risk pooling arrangement between the insurer and the insured.  Even if Section 5-335 has the effect on insurance premiums, it only applies to filed settlements of tort actions and therefore does not "substantially affect the risk pooling between the insurer and the insured" because there "is a wide array of reimbursement and subrogation rights . . . that are not implicated under the statute.  <u>Wurtz</u>, 2013 WL 1248631 at 19.  Therefore, Section 5-335 fails to meet the second prong of the <u>Miller</u> test and is not saved from preemption by ERISA.

Lastly, the Defendants contend that ERISA contains a "deemer" clause which provides that "an employee benefit plan shall not 'be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies."  <u>Wurtz</u>, 2013 WL 1248631 at 19.  However, the "deemer" clause only applies if it has been determined that the state law is saved from preemption.  <u>Id.</u> at 21.  Here, it is the Court's view that N.Y. GOL § 5-335 does not regulate insurance, and the "deemer" clause is irrelevant.

**D. As to Whether the Plaintiff is Empowered with a Statutory Lien**

In addition, the Defendants contend that ERISA does not afford the Plaintiff a statutory lien against the Settlement Proceeds and against Lite & Russell's attorney fees from that action. Longaberger Co. v Kolt, 586 F3d 459 (6th Cir. 2009) is instructive. In that case, involving an ERISA governed, self-funded employee welfare benefit plan which sought to enforce the terms of the Plan's reimbursement provisions against the defendant and his client, the defendant attorney appealed from the district's court's grant of summary judgment for the plaintiff. Id. The plan stated that it "'automatically [has] a first priority lien upon the proceeds of any recovery by you or your Dependent(s) from such party to the extent of any benefits provided[.]'" Longaberger Co., 586 F3d at 471. The court found that the district court correctly ruled that the plan was "self-executing and that the Plan language provides for an automatic and valid lien on the settlement funds to the extent of the benefits Samuel Billiter [the beneficiary] received from the Plan," and that the plan "required full reimbursement of benefits paid when a Plan participant received a judgment or settlement." Id. 471-472.

In the present case, the Plan contains similar language regarding reimbursement of the benefits paid. It states that "[the beneficiary] will reimburse the Plan immediately upon recovery." (Comp., ¶ 4.) Here, it is the Court's view that, as in Longaberger Co., the plain language of the plan creates an "automatic and valid lien on the settlement funds to the extent of the benefits . . . received from the Plan." Id. at 471.

**E. As to Whether the Plaintiffs Have the Legal Authority to Assert an Equitable Lien on the Legal Fees Earned by Lite & Russell in the Underlying Action**

Finally, the Defendants contend that the Plaintiff's second cause of action should be dismissed because the Plaintiff has not cited any legal authority that affords it a right to assert an equitable lien against the attorneys' fees earned by Lite & Russell. The Defendants assert that no

15

insurance contract or benefit plan between the Plaintiff and Castelli could affect the contingency

attorney's fee set forth in the retainer.

Lite & Russel was not a party to the agreement between Castelli and the Plan.  However,

under Harris Trust & Savings Bank v. Salomon Smith Barney Inc., 530 U.S. 238, 249–50, 120 S.

Ct. 2180, 147 L. Ed. 2d 187 (2000), a plan may seek equitable relief against a nonfiduciary party

in interest for engaging in a prohibited transaction under § 406(a), even though this section, by

its terms, only expressly applies to fiduciaries.  In so holding, the Court considered the statutory

construction of ERISA and noted that "§ 502(a)(3) makes no mention at all of which parties may

be proper defendants – the focus, instead, is on redressing the 'act or practice which violates any

provision of [ERISA Title I].' " Id. at 246, 120 S. Ct. 2180 (quoting 29 U.S.C. § 1132(a)(3)).

The Court concluded that liability under § 502(a)(3) does not hinge on whether a particular

defendant labors under a duty expressly imposed by the substantive provisions of ERISA. See id.

at 249, 120 S. Ct. 2180.

"Although the [Second] Circuit has not yet specifically addressed whether a plan

beneficiary's lawyer is a proper defendant in § 502(a)(3) actions, other circuits have held that

Harris instructs that they are." Bd. of Trustees of Health & Welfare Dep't of Const. & Gen.

Laborers' Dist. Council of Chicago & Vicinity v. Filichia, 12-CV-04360, 2013 WL 329035, at *3

(N.D. Ill. Jan. 29, 2013); see Longaberger, 586 F.3d at 468-69 (holding that § 502(a)(3) contains

"no statutory barrier that prevents [an attorney] from being a defendant in a suit brought pursuant

to § 502(a)(3) of ERISA, provided that the relief sought lies in equity."); Admin. Comm. for the

Wal–Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Horton, 513 F.3d 1223, 1228–29 (11th

Cir. 2008) ) (holding that a plan could use § 502(a)(3) to recover settlement proceeds in the

possession of a third party, stating that "the most important consideration is not the identity of

16

the defendant, but rather that the settlement proceeds are still intact); Bombardier Aerospace

Emp. Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough, 354 F.3d 348, 357–58 (5th Cir.

2003) (stating that "the Supreme Court's reasoning in Harris Trust influences us to conclude

today that § 502(a)(3) authorizes a cause of action against a non-fiduciary, non-'party in interest'

attorney-at-law when he holds disputed settlement funds on behalf of a plan-participant client

who is a traditional ERISA party").

Applying this principle, in Central States, Southeast and Southwest Areas Health and

Welfare Fund ex rel. McDougall v. Lewis, 871 F. Supp. 2d 771, 778 (N.D. Ill. 2012), the court

reasoned that an attorney can be a proper defendant if the attorney exercises control over the

particular funds identified in the complaint, such as by choosing to pay attorney's fees from those

funds instead of reimbursing the ERISA-regulated plan. See id.

Here, the Plaintiff has plead that Lite & Russell was Castelli's attorney during his

personal injury suit; helped Castelli recover the settlement; and "took a fee for legal services

rendered in connection with the underlying action out of the settlement proceeds obtained in

connection with [the] same." (Comp., at ¶17.)  "This plausibly pleads that [Lite & Russell]

exercised sufficient control over the settlement funds to be a proper defendant." Filichia, 12-CV-

04360, 2013 WL 329035, at *3; see Anderson v. Dergance, No. 08 C 2522, 2009 WL 1702820,

at *3 (N.D. Ill. June 18, 2009) (granting equitable relief to a plaintiff plan against a beneficiary

and his attorney where attorney held a portion of beneficiary's settlement fund in a trust account);

but see Crawford & Co. Med. Benefit Trust v. Repp, No. 11 C 50155, 2012 WL 716921, at *3–4

(N.D. Ill. Mar. 6, 2012) (dismissing a § 502(a)(3) claim against a lawyer where plaintiff failed to

plausibly state that lawyer was in possession of identifiable, non-dissipated funds that were still

in his control).  Accordingly, the Plaintiff has satisfied the requirements of § 502(a)(3) as to Lite

& Russell.

### III. CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED**, that the Defendants' motion to dismiss the Complaint is denied.

SO ORDERED
Dated: Central Islip, New York
August 8, 2013

*Arthur D. Spatt*
ARTHUR D. SPATT
United States District Judge